IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRIAN G. KEMPNER,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JP MORGAN CHASE BANK, N.A.**<br><br>Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian G. Kempner ("Plaintiff"), on behalf of all others similarly situated, brings this action against JP Morgan Chase Bank, N.A. ("Chase"). The following allegations are based on Plaintiff's knowledge, investigations of counsel, facts of public record, and information and belief.

## NATURE OF THE ACTION

1. Plaintiff seeks to hold the Defendant responsible for the injuries the Defendant inflicted on Plaintiff and thousands of similarly situated persons ("Class Members") due to the Defendant's dishonest, unfair, and fraudulent conduct regarding Certificates of Deposit ("CDs") renewals.

2. Defendant Chase is a wholly-owned subsidiary of JPMorgan Chase & Co., which is a leading financial institution. JPMorgan Chase & Co. serves institutional clients under its "J.P. Morgan" brand, and individual customers under its "Chase" brand.[1]

---

[1] https://www.jpmorganchase.com/about.

3. Plaintiff purchased CDs from Defendant at "Relationship Rates". In accordance with Defendant's representations and accepted commercial practice, Plaintiff expected that, upon maturity, CDs were to be "rolled over" into CDs of the same term and at a then-prevailing competitive interest rate. However, upon maturity, Plaintiff's Relationship Rate CDs were "rolled over" into "Standard Rate" CDs, some 400 times lower. Unbeknownst to Plaintiff, prior to the "roll over", Defendant, without legal basis or warning, closed his checking account for inactivity, thus making him ineligible for Relationship Rates.

4. Plaintiff was not informed by Defendant of the checking account closure, his purported ineligibility for Relationship Rates, and of the fact that his Relationship Rate CDs would roll over into Standard Rate CDs bearing virtually no interest. Plaintiff only found out about this "roll over" by chance and after the fact, when he checked his financial statement. To add insults to injury, Plaintiff then had to pay a penalty to "break" the severely disadvantageous Standard Rate CDs prior to maturity, and reinvest the funds.

5. Through this action, Plaintiff seeks to remedy the financial losses on behalf of himself and all similarly situated individuals whose CDs were sold by Defendant at Relationship Rates, but then "rolled over" at the Standard Rates.

6. Plaintiff seeks remedies including, but not limited to, compensatory damages, nominal damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief.

**PARTIES**

7. Plaintiff Kempner is a natural person and resident and citizen of Florida.

8. Defendant Chase is an Ohio corporation,[2] with its principal address at 270 Park

---

[2] https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=I

2

Avenue, New York, NY.[3]  Chase provides financial services to institutional and retail clients.

## JURISDICTION AND VENUE

9.　　This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because Plaintiff (and many members of the class) are citizens of states different than that of Defendant.

10.　　This Court has personal jurisdiction over Defendant, because Defendant maintains its principal place of business in this district.

11.　　Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant maintains its principal place of business in the jurisdiction.

## FACTUAL ALLEGATIONS

12.　　Defendant offers CDs to its retail clients.  CDs are a low-risk savings instrument which provides a fixed rate of interest for a given term.  Once a CD "matures", it can be renewed ("rolled over").  In generally accepted commercial practice, when a CD is "rolled over", the funds are reinvested at the then-prevailing rates.  However, as described more fully in this Complaint, Defendant radically departs from this practice without disclosure, causing its clients substantial monetary harm.

---

nitial&searchNameOrder=JPMORGANCHASEBANKNA%20Q170000000400&aggregateId=agent-q17000000040-4fd7a16e-f5af-41e2-aa4d-7b7a85962062&searchTerm=JP%20MORGAN%20CHASE%20BANK%2C%20N.A.&listNameOrder=JPMORGANCHASEBANKNA%20Q170000000400
[3] https://www.nytimes.com/2018/02/21/nyregion/jpmorgan-chase-headquarters.html

3

13. Defendant offers CDs at two different sets of rates: Relationship Rates and Standard Rates. Relationship Rates are hundreds of times higher than Standard Rates. For example, as of June 4, 2025, on its website, Chase provided that, for deposits of $100,000 or more, its CDs carried a Relationship Interest Rate of 3.9% (4 month maturity) and 2% (9 month maturity).[4] The page does not mention that, as described in this Complaint, upon maturity, Chase may, in certain circumstances, roll its clients' Relationship Rates CDs, without warning and without their consent, into non-relationship Standard Rates, which are about 200-400 times lower than Relationship Rates, depending on the term of the relevant CD.

**Plaintiff's Relationship with Chase**

14. Plaintiff became a Chase Private Client on or about October 20, 2023. He received a package of documents attached hereto as **Exhibit "A"** ("Private Client Package").

15. The Private Client Package lists a series of attractive CD Relationship Rates and states, in a barely-legible fine print: "CD and Retirement CD relationship rates are available to customers with a linked Chase personal checking account."

16. The Private Client Package includes a 25-page document entitled Additional Banking Services and Fees for Personal Accounts. This latter document, at page 24/25, states:

> "Automatically renewable CD: An automatically renewable CD will renew on the maturity date for the same term unless 1) you have a different renewal term as part of a CD ladder; 2) you change or close the account or 3) we notify you otherwise. Once your CD renews, any reference to the maturity date means the last day of the new term. For the renewal term, your CD will earn interest for the term and amount at the CD standard rate unless you qualify for the CD relationship rate. If your CD is closed during the grace period, it will not earn interest on or after the maturity date."

---

[4] https://www.chase.com/personal/savings/bank-cd

17. The document also states, on the title page, that it is "part of the Deposit Account Agreement". In turn, The Deposit Account Agreement included in the Private Client Package, states on page 19/26:

> **VI.B. Linking Your Accounts; Statements**
> **1. Linked accounts**
> You may link your qualifying accounts to your checking account to help you avoid some fees and get relationship rates. An account may be linked to only one checking account.
>
> We may automatically link accounts or we may provide some of the benefits you would be eligible for had you requested your accounts to be linked. If we don't, you may ask us to link your accounts. Your account information may be made available to any other owner on any of the linked accounts. If the checking account to which your other accounts are linked closes for any reason, it is your responsibility to request any remaining eligible accounts to be linked. If we determine your accounts are no longer eligible for linking, we may delink them and we are not required to notify you if we do.
> […]

**Plaintiff Purchases Relationship Rate CDs Which Are Rolled Over Into Standard Rate CDs Without Prior Warning or His Consent**

18. Plaintiff purchased a CD from Defendant in an amount exceeding $100,000 on or about June 30, 2024 . Prior to visiting the Scarsdale, NY branch to inquire about and invest in a Chase Relationship CD, Plaintiff had no relationship with Chase and had never banked there. As part of the account opening, Defendant requested that Plaintiff open a new, "linked" checking account. Defendant never told Plaintiff that he needed to fund this checking account, or that it would close the account as a result of inactivity. Plaintiff was not made aware that to qualify for a CD Relationship Rate he needed to fund the checking account or engage in any account activity. In fact, Chase opened the CD Relationship Rate account without the checking account being funded and with no commitment to fund it.

19. Plaintiff's CD had a 9-month term. The applicable annualized interest rate was 4.64% and the applicable Annual Percentage Yield[5] was 4.75%.

20. On or about March 30, 2025, Plaintiff's Relationship Rate CD "rolled over" at the Standard Rate of 0.01%. In other words, Defendant rolled over the Plaintiff into a 9-month CD with virtually no interest, and then proceeded to inform Plaintiff that if he wished to break the CD, he would need to pay a penalty. Plaintiff did pay the penalty in order to break the Standard Rate CD which provided virtually no interest.

21. The purported reason given by Defendant for "rolling over" Plaintiff's CD at a rate that was some 400 times lower than the one at which he initially invested was that he was no longer eligible for Relationship Rates.

22. Plaintiff later learned that several months following his purchase of Relationship Rate CDs, and unbeknownst to Plaintiff, Defendant closed Plaintiff's checking account for inactivity, making him ineligible for Relationship Rates. Defendant did not notify Plaintiff of this account closure, that a lack of funding or activity would lead to the closing of his checking account, or of the fact that Plaintiff would no longer be eligible for CD Relationship Rates. Instead, when time came for Plaintiff's CDs to be rolled over, Defendant, without any prior notice, "rolled over" his CD for 9 months at the Non-Relationship Rate, some 400 times lower.

23. Plaintiff was given no warning that the interest rate that would attach to the CD once it rolls over would be effectively zero. Had he been so advised, he would have never permitted his CD to roll over, and would have invested his funds elsewhere. Alternatively, he

---

[5] The Annual Percentage Yield (API) is the actual rate of return on an investment or deposit, including the effects of compound interest. It is expressed as a percentage and reflects the total interest a depositor would earn on a deposit account over one year.

6

would have taken steps to ensure that his linked checking account remained active, to qualify for Relationship Rates.

24. On information and belief, Plaintiff's experience is typical of numerous CD holders who first purchase CDs at the attractive Relationship Rate, and then are quietly "rolled over" into CDs bearing near-zero Standard Rates, all without any prior warning or disclosure.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action individually and on behalf of all other persons similarly situated ("the Class") under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

26. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons residing in the United States who purchased Certificates of Deposit from Defendant at Relationship Rates, and rolled over at Standard Rates.

27. The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

28. Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and these entities' current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

29. Plaintiff reserves the right to amend or modify the Class definition—including potential Subclasses—as this case progresses.

30. Plaintiff and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

31. **Numerosity**. The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals who purchased CDs from Defendant and, at maturity, were "rolled over" into CDs bearing interest rates hundreds of times lower than the ones at which they invested.

32. **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

    a. If Defendant breached its contracts with Class Members who purchased CDs at Relationship Rates by rolling over these CDs at Standard Rates;

    b. If Defendant was unjustly enriched by selling CDs at Relationship Rates and rolling over these CDs at Standard Rates;

    c. If Defendant fraudulently induced Plaintiff and Class Members to invest in its CDs;

    d. If Defendant committed an unfair or deceptive act or practice by selling CDs at Relationship Rates and rolling over these CDs at Standard Rates;

    e. If Plaintiff and Class Members were injured as a proximate cause or result of Defendant's misconduct;

      f.      If Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

      g.      If Plaintiff and Class Members are entitled to damages and/or injunctive relief.

33. **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like every other Class Member, purchased CDs from Defendant at Relationship Rates and was "rolled over" into CDs at Standard Rates. Moreover, all Plaintiff and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

34. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

35. **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff and all Class Members bought CDs at the Relationship Rates but were "rolled over" into CDs at Standard Rates. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

36. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

37. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

38. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

39. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above, including in paragraph 32.

40. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## FIRST CAUSE OF ACTION
### Breach of Contract
**(On Behalf of the Plaintiff and the Class)**

41. Plaintiff re-alleges and incorporates by reference paragraphs 1-40 of the Complaint as if fully set forth herein.

42. Acting in the ordinary course of Defendant's business, Defendant entered into Deposit Account Agreements with Plaintiff and Class Members, which form binding contracts between the parties.

43. The Deposit Account Agreements were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the implied covenants that Defendant would act fairly and in good faith in carrying out their contractual obligations to take reasonable measures to ensure that Plaintiff and Class Members are eligible for Relationship Rates when their CDs "roll over" and/or to notify them if they cease being eligible for Relationship Rates.

44. Plaintiff and Class Members fully performed all conditions, covenants, obligations, and promises owed to Defendant under Deposit Account Agreements.

45. In contrast, Defendant has breached Deposit Account Agreements by rolling Plaintiff's and Class Members' Relationship Rates CDs into Standard Rate CDs without any basis or justification in the Deposit Account Agreement, and without advising Plaintiff and Class Members that they no longer qualified for Relationship Rates.

46. As a result of Defendant's breach of the Deposit Account Agreements, including but not limited to its failure to act in good faith in the "roll over" of Relationship Rate CDs, Plaintiff and Class Members have been harmed, damaged, and/or injured by being deprived of the higher

11

("Relationship Rate") interest rates to which they were entitled. Plaintiff and Class Members seek actual, consequential and/or nominal damages in respect of the misconduct alleged herein, including the foregone interest, the time value of money on the funds they would have invested elsewhere, and the penalties paid to "break" Standard Rate CDs.

## SECOND CAUSE OF ACTION
### Negligent Omission
### (On Behalf of the Plaintiff and the Class)

47. Plaintiff re-alleges and incorporates by reference paragraphs 1-40 of the Complaint as if fully set forth herein.

48. This Cause of Action is pleaded in the alternative to Breach of Contract.

49. As alleged in greater detail above, in inducing Plaintiff and Class Members to purchase its CDs, and in providing the Private Client Package, Defendant omitted material information regarding the fact that Plaintiff and Class Members would no longer be eligible for Relationship Rates if their checking accounts are closed, and that checking accounts may be closed without any notification or prior consent, unless they are and remain funded.

50. Defendant knowingly and deliberately failed to disclose that (a) Plaintiff and Class Member may become ineligible for Relationship Rate CDs if their "linked" accounts are deactivated for any reason, (b) that this may occur without notification to them, and (c) that as a result their Relationship Rate CDs would be "rolled into" Standard Rate CDs, again without any notification to them.

51. Such omissions were material (1) when Plaintiff and Class Members made the decision to purchase Relationship Rate CDs and/or (2) when Plaintiff and Class Members ceased to be eligible for Relationship Rate CDs upon rollover (but were not notified of this).

52. Plaintiff and Class Members would not have purchased CDs from Defendant and/or would not have permitted their Relationship Rate CDs to "roll over" into Standard Rate CDs if

12

they were advised of the material facts listed above. Alternatively, Plaintiff and Class Members could have funded their linked checking accounts, to ensure that they are not deactivated.

53. As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and Class Members have been harmed, damaged, and/or injured by being deprived of the higher Relationship Rates to which they were entitled, as well as the time value of money on the funds they would have invested elsewhere, and by being required to pay a penalty to "break" the Standard Rate CDs. Plaintiff and Class Members seek actual, consequential and/or nominal damages in respect of breaches of the misconduct alleged herein.

54. Plaintiff and Class Members also seek punitive damages. Defendant's conduct described herein is actionable as an independent tort. The conduct is egregious in nature. And, because it is encapsulated in Defendant's procedures and policies, it is part of a pattern directed at the public generally.

## THIRD CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of the Plaintiff and the Class)

55. Plaintiff re-alleges and incorporates by reference paragraphs 1-40 of the Complaint as if fully set forth herein.

56. This Cause of Action is pleaded in the alternative to Breach of Contract.

57. As alleged above, the Private Client Package provided to Plaintiff listed Relationship Rates which Defendant knew to be false because these rates would not apply once the investments "roll over", unless investors took additional actions (such as funded their linked checking account) which they were not informed about. The representations in the Private Client Package were material to Plaintiff and Class Members. Plaintiff and Class Members reasonably

relied on these representations when they purchased their Relationship Rate CDs and when they permitted these CDs to "roll over."

58. Defendant made the above representations with knowledge of their falsity, or at least with extreme disregard for their truth. Defendant knew that CD interest rates were extremely important to its customers, and that customers would not knowingly permit their Relationship Rate CDs to "roll over" into Standard Rate CDs, at interest rates that are some 200-400 times lower. Defendant knew that the advertised Relationship Rates would not apply to Class members once their CDs "roll over", unless Class Members fund their checking accounts, which they were not advised to do.

59. Such representations were material (1) when Plaintiff and Class Members made the decision to purchase Relationship Rate CDs and/or (2) when Plaintiff and Class Members ceased to be eligible for Relationship Rate CDs upon rollover (but were not notified of this).

60. Plaintiff and Class Members would not have purchased Defendant's Relationship Rate CDs, or would not have allowed them to "roll over" into Standard Rates, if they knew that these representations were false. Alternatively, Plaintiff and Class Members could have funded their linked checking accounts, to ensure that they are not deactivated.

61. As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and Class Members have been harmed, damaged, and/or injured by being deprived of the higher Relationship Rates to which they were entitled, as well as the time value of money on the funds they would have invested elsewhere, and by being required to pay a penalty to "break" the Standard Rate CDs. Plaintiff and Class Members seek actual, consequential and/or nominal damages in respect of breaches of the misconduct alleged herein.

62. Plaintiff and Class Members also seek punitive damages. Defendant's conduct described herein is actionable as an independent tort. The conduct is egregious in nature. And, because it is encapsulated in Defendant's procedures and policies, it is part of a pattern directed at the public generally.

## FOURTH CAUSE OF ACTION
### Fraudulent Inducement
**(On Behalf of the Plaintiff and the Class)**

63. Plaintiff re-alleges and incorporates by reference paragraphs 1-40 of the Complaint as if fully set forth herein.

64. As alleged above, the Private Client Package provided to Plaintiff listed Relationship Rates which Defendant knew to be false, because these rates would not apply once the investments "roll over", unless investors took additional actions (such as funded their linked checking account) which they were not informed about.

65. The representations in this document were material to Plaintiff and Class Members. Plaintiff and Class Members reasonably relied on these representations when they purchased their Relationship Rate CDs and when they permitted these CDs to "roll over."

66. Defendant made the above representations with knowledge of their falsity, or at least with extreme disregard for their truth. Defendant knew that CD interest rates were extremely important to its customers, and customers would not knowingly permit their Relationship Rate CDs to "roll over" into Standard Rate CDs, at interest rates that are some 200-400 times lower.

67. Such representations were material (1) when Plaintiff and Class Members made the decision to purchase Relationship Rate CDs and/or (2) when Plaintiff and Class Members ceased to be eligible for Relationship Rate CDs upon rollover (but were not notified of this).

68. Defendant intended for Plaintiff and Class Members to rely on its representations.

69. Plaintiff and Class Members would not have purchased Defendant's Relationship Rate CDs, or would not have allowed them to "roll over" into Standard Rates, if they knew that these representations were false.

70. As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and Class Members have been harmed, damaged, and/or injured by being deprived of the higher Relationship Rates to which they were entitled, as well as the foregone interest, the time value of money on the funds they would have invested elsewhere, and the penalties paid to "break" Standard Rate CDs. Plaintiff and Class Members seek actual, consequential and/or nominal damages in respect of breaches of the misconduct alleged herein.

71. Plaintiff and Class Members also seek punitive damages. Defendant's conduct described herein is actionable as an independent tort. The conduct is egregious in nature. And, because it is encapsulated in Defendant's procedures and policies, it is part of a pattern directed at the public generally.

**FIFTH CAUSE OF ACTION**
**Violation of N.Y. Gen. Bus. Law. §349 ("NYGBL")**
**(On Behalf of the Plaintiff and the Class)**

72. Plaintiff re-alleges and incorporates by reference paragraphs 1-40 of the Complaint as if fully set forth herein.

73. Contrary to NYGBL §349(a), which prohibits suppliers from committing "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state", as described in detail above, Defendant sold Plaintiff and Class Member Relationship Rate CDs which it then "rolled over" into Standard Rate CDs, without any contractual right to do so and without any notification. Defendant's conduct was deceptive, as it deliberately misled Plaintiff and Class Members into investing in Relationship Rate CDs and failed

to advise them that their CDs would "roll over" into Standard Rate CDs upon maturity if Plaintiff's and Class Members' checking accounts are closed for any reason (and without any notification).

74. Defendant's conduct was likely to, and did, mislead Plaintiff and other reasonable consumers, including Class Members, acting reasonably under the circumstances.

75. This misconduct constitutes a deceptive act or practice within the meaning of NYGBL. As explained above, for Plaintiff and Class Members, the Relationship Rate CD price advantage did not exist beyond the initial term, but Defendant represented that CDs would automatically renew upon maturity.

76. Defendant engaged in the misconduct described herein willfully and knowingly. Pursuant to NYGBL §349(h), the Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the Court finds the defendant willfully or knowingly violated this section. The Court may also award reasonable attorney's fees to a prevailing plaintiff.

77. This Court has jurisdiction over the statutory claims of Plaintiff and the Class under NYGBL, because the sale of CDs that forms the subject of this Complaint was an act or practice directed from and executed at Defendant's headquarters in New York.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

A. An Order certifying this action as a class action and appointing Plaintiff as Class representative, and the undersigned as Class Counsel;

B. A mandatory injunction directing Defendant to cease the practice of rolling over Relationship Rate CDs into Standard Rate CDs without advising the holders of

   Relationship Rate CDs and providing them an opportunity to halt the rollover or otherwise reallocate their assets;

C. An award of damages, including actual, nominal, punitive and consequential damages, in an amount to be determined;

D. An award of pre- and post-judgment interest and costs, as permitted by law;

E. An award of attorneys' fees;

F. Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

G. For all other Orders, findings, and determinations identified and sought in this Complaint; and

H. Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for any and all issues in this action so triable as of right.

Dated: August 14, 2025         Respectfully Submitted,

                 */s/ Ronald Podolny*

|  | Ronald Podolny<br>ronald.podolny@forthepeople.com<br>John A. Yanchunis*<br>JYanchunis@forthepeople.com<br>**MORGAN & MORGAN**<br>**COMPLEX LITIGATION GROUP**<br>201 North Franklin Street 7th Floor<br>Tampa, FL 33602<br>T: (813) 223-5505<br>F: (813) 223-5402 |
|---|---|

*Pro hac vice forthcoming*

**Counsel for Plaintiff and the Class**